**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BOARD OF TRUSTEES of the PIPE FITTERS RETIREMENT FUND, LOCAL 597, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHERN WEATHERMAKERS HVAC, INC., *et al.*, <br><br> Defendants. | Case No. 13 CV 8562 <br><br> Judge John Robert Blakey |

**DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendants, Northern Weathermakers HVAC, Inc. ("Northern"), and American Weathermakers, Inc. ("American"), by and through their undersigned counsel, state as follows as their Response to Plaintiffs' *Motion for Summary Judgment* (the "Motion"):

**I.     INTRODUCTION**

Plaintiffs admittedly started off this case without a shred of evidence that American was the alter ego of Northern. Now, after more than a year of discovery, more than 10,000 pages of documents produced, and many depositions, Plaintiffs' have nothing more. Northern is, and always has been, a "union shop" performing commercial work. American is, and always has been, a "non-union shop" performing residential work. Plaintiffs' recitation of facts is misleading, inconsistent with the record and, in some instances, creates entirely new "facts." For those and the reasons set forth more fully below, there is absolutely no evidence that American should be considered a "single entity" with Northern, and there is no evidence that American is the "alter ego" of Northern. Plaintiffs' Motion must therefore be denied.

## II. LEGAL STANDARD

As an initial matter, in considering Plaintiffs' summary judgment Motion, this Court must construe the record and "all facts and reasonable inferences in favor of the nonmoving party," here, Defendants American and Northern. *See, e.g., Huang v. Cont'l Cas. Co.*, 754 F.3d 447, 450 (7th Cir. 2014); *Gordon v. Fedex Freight, Inc.*, 674 F.3d 769, 772-773 (7th Cir. 2012). Thus, this Court should not grant summary judgment in Plaintiffs' favor unless there are no "genuine issues of *material* fact" such that Plaintiffs are entitled to judgment as a matter. *See* Fed. R. Civ. Pro. 56 (emphasis added). A "material fact" is one that "affects the outcome of the suit." *Taylor-Novotny v. Health Alliance Medical Plans, Inc.*, 772 F.3d 478, 488 (7th Cir. 2014). The entry of summary judgment is "is inappropriate when, based on the evidence in the record, a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III. ARGUMENT

Nearly all of purportedly undisputed "facts" contained within Plaintiffs' "Statement of Material Facts" (Mot. at 1-8) are either incomplete, misleading, or simply incorrect. Plaintiffs' Statement includes more than six pages of "facts," that are then repeated wholesale in their "Argument" as part of their Memorandum of Law. (Mot. at 8-18). There is no need for the Court to wade through the disagreements on each of those facts twice, and Defendants address each of the material facts in the context of responding to Plaintiffs' argument, below.

    **a.** **Plaintiffs Lack Undisputed Evidence On *Any* Factor This Court Must Consider To Determine Whether American Should Be Treated As A "Single Employer" With Northern – And The Record Evidence Demonstrates The Lack Of Connectedness Between The Two Companies**

Plaintiffs' first contend, "[b]ased on the undisputed facts, there is no dispute that … Northern and American are a single enterprise." In fact, however, there is very little that is *not* in dispute, and certainly every single material fact Plaintiffs' rely upon for their "single enterprise"

2

theory is either incomplete, out of context, or wrong. It is true that this Court can find, under appropriate circumstances, that two companies actually constitute a single entity (or single employer, as the theory is sometimes referred to) if the Court finds sufficient admissible record evidence that the two companies should be considered as one in light of the following criteria: "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Boudreau v. Gentile*, 646 F. Supp. 2d 1016, 1021 (N.D. Ill. 2009). In measuring each factor, this Court "must weigh the totality of the circumstances." *Trustees of Pension, Welfare & Vacation Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co.*, 995 F.2d 785, 788 (7th Cir. 1993). Here, when exposed to the light of the entire record, Plaintiffs cannot meet even a single factor and their single entity argument must be denied.

> i. **The Fact That The Same Person Owns Both American And Northern, Yet Has A Very Limited Role In American And No Role In The Management Of Northern, Cannot Support A Finding Of A "Single Entity"**

Plaintiffs tackle the second factor first, and point to Richard Hochschild as the owner of both American and Northern. Mot. at 10. While true, he only performs some limited marketing work for American; he does not perform any work for Northern; and he is not involved in the day-to-day operations of either company. Defendants' Statement of Additional Undisputed Material Facts ("DSF") at ¶ 13. Mr. Hochschild does not work on any jobs, schedule any employees to work on jobs for either company, nor does he exert any control over either entity. DSF at ¶ 10-13. For Plaintiffs to rely on that factor in any way to support their argument of a single entity is thus baseless. *See, e.g., Rittmeyer v. Advance Bancorp, Inc.*, 868 F. Supp. 1017, 1024 (N.D. Ill. 1994) ("However, the fact that defendant owns both subsidiaries—and thus has shareholder control over them—does not by itself justify a finding of single employer status.").

> ii. **Plaintiffs Provide An Incomplete Review Of The Record Evidence To Support An Alleged Interrelation Of Operations – Indeed, What Plaintiffs**

### Categorize As "Commingling" Is Nothing More Than Wholly Proper Every Day Accounting

With respect to the "interrelation of operations" factor, Plaintiffs' argument only works if its "facts" are viewed in a vacuum. Mot. at 10. With the context of the entire evidentiary record, however, it is plain (or at least cannot be said to be uncontested) that, among other things, the Defendant companies did *not* "commingle" funds and they did not have any shared operational employees, daily operational departments, or office functions. The two companies, working with separate employees on separate customers for separate lines of business, are simply not "interrelated" and Plaintiffs' argument on this factor must fail.

Plaintiffs start with what they blindly label as "commingling of funds," demonstrating a fundamental lack of understanding of the accounting for American and Northern. Mot. at 10. Plaintiffs are correct that Northern maintains a "zero balance" account. Mot. at 11; *see also* RPSF at ¶¶ 70-71. Based on that, Plaintiffs leap to the conclusion that "it is clear that Northern's bank account is merely a holding account for American." Mot. at 11. There is nothing wrong, improper, or illegal with the use of zero balance accounts. *See, e.g.*, *In re World Access, Inc.*, 301 B.R. 217, 271 (Bankr. N.D. Ill. 2003) (noting the use of zero balance accounts and, based on that, declining to find any "'misbehavior' of any kind, much less fraud or wrongdoing."). This is not a case where there is some common pool of money in a shared bank account, without proper accounting, that can be found to demonstrate "interrelatedness." Mot. at 10-11, citing *Gorence v. Eagle Food Centers, Inc.*, 1994 WL 445149, at *2 (N.D. Ill. Aug. 16, 1994). To the contrary, customer payments, certain vendor payments, and payroll, among other things, are charged directly to Northern's bank account. RPSF at ¶¶ 70-72. If there is a positive balance at the end of the day in Northern's account, then that amount is swept automatically into the American account. *Id.* If there is a negative balance in Northern's account, that amount is automatically

4

transferred from American to cover the balance. *Id.* Any cash inflow or outflow from the Northern account is tracked, in accounting terms, as a debit or credit against Northern. *Id.* The same is true for any payments to or expenses of Northern. *Id.* There is nothing nefarious about this automatic process, as it allows the companies to take advantage of centralized purchasing power and the economies of scale of a centralized accounting and banking operation, without the need for manual transfers. *Id.* The bank automatically handles the automatic daily transfer, while the Accounting Department ensures each transaction is counted against the correct account. *Id.* All accounting records for both companies properly record these transfers using the intercompany accounts, and there is no common pool of money from which transaction cannot be traced to the particular company that incurred the expense. *Id.*

Thus, for example, if office supplies were ordered for Northern, that charge would count against Northern's account, not American's or some imaginary combined account. *Id.* Northern's account is *not* a holding account for American, and Plaintiffs' lack of understanding of common accounting practices cannot be used to support an accusation of "commingling" of any funds. *See, e.g. Burnett v. Intercon Sec. Ltd.*, 1998 WL 142395, at *7 (N.D. Ill. Mar. 24, 1998) ("using the same bank does not show that bills were paid out of a single account or that banking practices ignored the distinctiveness of each entity's accounts. Moreover, sharing the same commercial payroll service does not show that accounting or bookkeeping was singular or that the hundreds of employees employed by the three entities were lumped into one").

Beyond that, Plaintiffs contend that Northern allegedly has insufficient funds to pay its debts. Mot. at 11. That is not the case, for all the reasons explained above, and there is not any record evidence to support that incorrect conclusions. Any money moving into or out of (in regards to "debts") is tracked and allocated directly to Northern. RPSF at ¶¶ 70-72; *see also id.*

at ¶ 53 ("Any supplies Ms. Borrero ordered on behalf of either company was allocated against that company."). Where Plaintiffs see smoke – namely in a Balance Sheet line item for both companies, "Due from Affiliate" – there is no fire. Mot. at 11. Those line items represent simple accounting for a zero balance account. RPSF at ¶ 73 ("Do you know the basis of this item that's described here as due from affiliate? … A. It represents intercompany transactions between the two companies" which is a "daily" and "normal" occurrence.); 80:9-11 ("it is the net effect of we saw the zero balance accounts. It is those transactions.").[1] In a footnote, Plaintiffs claim proof of American paying Northern's debts in the form of two payments to Union funds. Mot. at 11 n.3. Yet, as American's Larry Hills makes clear, he reviewed those records and determined that Northern made those payments because it was Northern's obligation to pay the Union. RPSF at ¶¶ 74-75. There has been no commingling of funds, and what Plaintiffs find "most telling" (Mot. at 10) is nothing more than accurate and complete accounting, charged against the company incurring that expense or earning any revenue attributable to it.

> iii. **American And Northern Do Not "Share" Even A Single Employee, And Plaintiffs Imply And Claim That The Accounting Staff Has A Much More Significant Operational Role Than The Record Supports**

Plaintiffs next contend that the companies share employees and "daily operational departments," which apparently constitute the "majority of day-to-day administrative, payroll, facilities, technology, and human resources operations of both Defendants." Mot. at 11. On closer inspection, however, Plaintiffs' contention of "sharing" does not pan out. To start, it is flatly wrong that *any* employee of either company is "shared." DSF at ¶¶ 29, 34.[2] Plaintiffs

---

[1] It is true that American has, at times, loaned money to Northern. RPSF at ¶ 73. But that is exactly the point – those transactions were *loans* and recorded as such. Plaintiffs' reliance on the "Due from Affiliate" line item does not prove any commingling. If anything, it demonstrates the effort each company took to properly account for each and every transaction.
[2] Plaintiffs' initial recitation of facts also includes Fredi Pilkati as a purported "shared" employee. Mot. at

6

point to several employees in the Accounting Department and claim they perform facilities, technology, and human resources ("HR") operations for both companies, concluding those employees are only paid by American. Mot. at 11. That too is incorrect.

Carmen Borrero is the "facility manager" for both Northern and American. RPSF at ¶ 53. However, all that means is that Ms. Borrero orders office supplies for each company, and then charges the cost of those supplies *to the company using it*. *Id.* With respect to HR, Ms. Borrero actually performs little more than record keeping, and has no role in hiring or firing any employee of either company. RPSF at ¶ 50. No employee is "in charge" of either company's IT (RPSF at ¶ 58), and each employee has his or her own computers from their respective employer, either American or Northern (DSF at ¶ 18). Finally, Plaintiffs' contention that an Accounting employee is "in charge" of "safety/labor related matters for both Defendants" is entirely misleading. The Accounting staff's only role with regards to operational safety is and always has been solely related to record keeping. RPSF at ¶ 56. Safety policy, safety violations, and accident investigation are all performed by operations for either American or Northern, as applicable. *Id.* Moreover, while American and Northern make use of a centralized Accounting function under Larry Hills, any work performed by an Accounting Department employee on behalf of Northern is reimbursed from Northern to American. DSF at ¶¶ 5-6.

Plaintiffs attempt to take what are essentially accounting and records-keeping personnel to claim that the employees are instrumental to the daily operations of both Defendants. Mot. at 12, citing *Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wisconsin & Its Local 5*, 724 F.3d 939, 947 (7th Cir. 2013). Yet what the *Lippert* court actually found to be far "more important[]" was that the centralized function was "mak[ing] the critical

---

6. Again, Plaintiffs are simply wrong in that regard. DSF at ¶¶ 7-8 ("Fredi Pilkati is a Northern employee who did not and does not work for American.").

7

decision" as to which company "should make a bid on a particular project, and if so, what to bid, as if all three companies were part of the same organizational chart." *Lippert Tile Co.*, 724 F.3d at 947. Here, the centralized Accounting Department has no role at all in the scheduling or management of American *or* Northern. DSF at ¶¶ 5, 28, 33. What is more, Mr. Hills has no role at all in supervising or directing any Northern employee, and only has management authority for his own Accounting Department staff. *Id.* at ¶¶ 15, 28, 33. American and Northern do *not* share customers and they do *not* share or finish jobs for each other. *Id.* at ¶ 23, 34. Based on a full review of the actual record evidence, it cannot be said that a centralized Accounting function, without any actual managerial or operational control, establishes the "interrelatedness" that Plaintiffs claim exists. At best for Plaintiffs, there are pervasive questions of material fact as to the roles of Accounting staff such that the grant of summary judgment in favor of the Plaintiffs would be completely improper and without admissible record support. Indeed, that the Accounting Department was "instrumental to the daily operation" of either company (Mot. at 12) could be said of nearly any employee – and most especially those employees performing the work of each company – none of which were ever shared or worked on the same jobs. DSF ¶ 34. Plaintiffs' arguments and positioning ignores the realities of each company's business and their Motion must be denied.

  **iv.**  **American And Northern Perform Different Work And Do Not "Share Resources"**

In a further attempt to claim American and Northern are "one in the same," Plaintiffs abstract the work both American and Northern perform to such a degree as to leave out every important detail. Mot. at 12. For example, while both American and Northern perform work in the high-level category of heating, ventilation, and air conditioning (HVAC) – the services performed are quite different. American's employees service and install the following

residential products: furnaces, boilers, air conditioners, humidifiers, dehumidifiers, air cleaners, germicidal light, thermostats, water heaters, and generators. Further, American employees blow insulation into attics and clean air ducts. RPSF at ¶ 19. On the other hand, Northern provides heating, air conditioning, refrigeration services and installations for the commercial and industrial markets. *Id.* Any residential work Northern performs is one percent or less of its overall business, and is only performed where Northern is on-site for a commercial project and some small residential work needs be done. *Id.* at ¶ 20. American does not perform commercial work. *Id.* at ¶ 21. American and Northern use the slogan, "We won't be comfortable until you are," as do many other contractors working in the high-level area of HVAC services. DSF at ¶ 32. They do not share the same logo. RPSF at ¶ 24. Finally, Plaintiffs' claim that Northern "placed its name on and use [sic] a vehicle leased in the name of American" amounts to nothing more than a third-party clerical error – entirely out of the control of either Defendant. RPSF at ¶ 77, DSF at ¶ 21-22. More than that, American and Northern do *not* share vehicles. DSF at ¶ 21. In sum, as demonstrated by the record evidence, there is nothing, and plainly nothing uncontested, demonstrating American and Northern's "interrelatedness."

   **v.**  **American And Northern Do Not Share Space Or Functions, As Plaintiffs' Strained Reading Of The Record Implies – The Record Evidence Reflects How Separate The Two Entities Actually Are On A Day-To-Day Basis**

Plaintiffs' description of what it terms "shared office space, technology, and daily office functions" is directly contrary to the admissible record evidence. Mot. at 12. For example, there is no testimony that the parking lot is "shared." RPSF at ¶ 26. Nor do the companies share a lobby. Mot. at 12, RPSF at ¶ 28 ("there's a lobby that is for American Weathermakers, and there's another entrance for – for Northern Weathermakers HVAC." ). Each entrance is labeled with the respective company's name. *Id.* at ¶ 29. The companies do *not* share a warehouse, and

it is actually segregated and a "good portion" is under "lock and key " for American's use only. *Id.* at ¶ 27. The conference and training rooms Plaintiffs rely upon are available for American's or Northern's use, but never at the same time. *Id.* at ¶¶ 30, 31; *see also* DSF at ¶ 17. Any alleged "file room" (Mot. at 12) may or may not exist, as there is no competent testimony in that regard. RPSF at ¶ 32. Finally, there is not a shred of evidence, in Plaintiffs' "facts" or otherwise, to conclude that "employees for both Defendants enter through the same entrance and spend much of their day working side by side." Mot. at 13. In fact, the admissible record evidence demonstrates that American and Northern have entirely segregated workspaces, and thus could not and do not work side by side. RPSF at ¶ 25; *see also* DSF at ¶ 28.

Plaintiffs are correct that the companies share a computer server (Mot. at 13), but leave out that it is programmatically segregated so that no Northern employees can access American's e-mails, data, or files, and *vice versa*. *Id.* at ¶ 34; DSF at ¶ 27. Plaintiffs' further simplistic claim that the companies' share an "email network" also misses the point. Mot. at 13. The email domain is purely for technical routing purposes "into the building," but each employee has an email address with the domain for their respective employer (*i.e.* American or Northern). RPSF at ¶ 38. Northern employees do not use an American email address, and *vice versa*. *Id.* Furthermore, Plaintiffs are again wrong that American and Northern when they claim that they use the same "critical" software packages under one license. Mot. at 13. American is the primary user of the Davis Business Solutions, Inc. software and holds the proper license. *Id.* at ¶¶ 40, 42. Both American and Northern use Microsoft Office, under their respective and separate licenses. *Id.* at ¶ 42. With respect to the parties' cellular phone plan (Mot. at 14), Northern reimburses American for its usage on that plan, which is held in American's name to increase purchasing power. *See, e.g.*, RPSF at ¶ 70. In addition, Plaintiffs' reliance on a foundationless

"in process" website, riddled with errors from a third-party, and a picture, to conclude Defendants "believed [themselves] to be one company" (Mot. at 13), is directly contradicted by the record evidence. RPSF at ¶¶ 78-79 (regarding the website, "[t]hat's an error … Mustang Internet Services does both of these … there are multiple errors here … I think these are like a page in process or something … it's clearly wrong. It's clearly not finished or anything.").

Finally, Plaintiffs contend that, because both Northern and American participate in a 401(k) plan, a health care plan, and a worker's compensation plan, they must be treated as one in the same. Mot. at 13-14. Yet again, any contributions, benefits, or costs associated with any of those items, and related to Northern employees, are paid for by Northern, and *not* by American. RPSF at ¶¶ 65-67. As Plaintiffs note, at least one court has found a *shared* 401(k) plan and/or joint liability insurance policy can support a finding of interrelatedness. Mot. at 14, citing *Cent. States, Se., Sw. Areas Pension Fund v. George W. Burnett, Inc.*, 451 F. Supp. 2d 969, 974 (N.D. Ill. 2006). However, those were *not* the two factors the court in that case found truly dispositive of the issue. In *Cent. States*, the two companies had the same person directing day-to-day operations and bidding on jobs, with shared employees, and every employee was paid by the same company. *Id.* at 976. None of those factors exist here – American and Northern do not share customers, employees, or jobs. DSF at ¶ 34. The same person does not direct the daily operations of both companies. *Id.* at ¶¶ 14, 16. Finally, American pays American's employees and Northern's employees are paid by Northern. *Id.* at 26. Plaintiffs' cherry picking of certain facts and presentation of those facts in a vacuum must be disregarded, and its Motion denied.

>    vi.  **American And Northern Do Not Share Management, And The Accounting Department Simply Does Not Have The Operational Powers Plaintiffs Must Rely On For Their Argument To Succeed**

Plaintiffs contend, based purely on the presence of a centralized Accounting Department,

11

that Defendants have "common management." Mot. at 14. That too is false, ignores the undisputed record evidence, and turns the case law on common management factors on its head. Where courts have found common management, it has not been on the basis of centralized records keeping – it is on a shared management team running the business, as Plaintiffs' own cited cases make clear. *Id., citing Lippert Tile Co.*, 724 F.3d at 947 (finding "more important[]" than anything else that the same entity controlled the job bidding process for two companies); *Cent. States, Se. & Sw. Areas Pension Fund v. John Clark Trucking & Rigging Co.*, 2009 WL 780455, at *3 (N.D. Ill. Mar. 19, 2009) (noting that same individuals controlled the "bidding [of] jobs, dispatching [of] crews, and general management of the company" for both entities).

Plaintiffs point to the "Hills Department" as their sole proof that American and Northern have "common management." Mot. at 15. But Plaintiffs do not contend, nor could they, that there is a single fact to support any claim that American and Northern have any shared individual or individuals through which bidding, staffing, dispatching, or any other aspect of the running of the actual operations is shared. Indeed, as stated throughout this Response, the opposite is actually true: American and Northern do not share customers, employees, vehicles, or jobs and simply do not get involved in the business of each other. DSF at ¶¶ 23, 28-29, 33-34. Beyond that, Plaintiffs do nothing more than attempt to tack on responsibilities that the Accounting Department does not actually even handle.[3] That still does not even come close to a claim that the Department has a role in actually *directing* the operations of either company. Plaintiffs cannot present a single piece of admissible record evidence to demonstrate anything beyond a

---

[3] For example, Plaintiffs again claim Ms. Borrero "manages all human resource tasks" (Mot. at 15), which is simply not true. RPSF at ¶ 51. They further claim that Ms. Garfinkle handles dispatch for both companies (Mot. at 15), which appears nowhere in the cited "facts" and which is not in fact performed by Ms. Garfinkle (or any other employee). RPSF at ¶ 43. Nor is Ms. Garfinkle in charge of "all safety compliance issues." RPSF at ¶ 56.

12

centralized Accounting Department that performs essentially record keeping. Without more, they cannot demonstrate any common management, and their Motion must be denied.

> vii. **A Shared Accounting Department Does Not Mean "Centralized Control Of Labor Operations" When The Personnel Of That Department Have No Authority To Direct Any Northern Or American Employees**

In claiming that Defendants have "centralized control of labor operations," Plaintiffs rely on the fact that the companies' shared some HR functions and baldly claim that "a number of employees have shifted back and forth between the Defendants." Mot. at 15. Neither of those claims is supported by reality, let alone admissible record evidence, and Plaintiffs' cited precedent supports an entirely contrary finding. For example, as discussed above, the "shared" HR function is little more than record keeping (RPSF at ¶ 51), without any authority to hire or terminate employees, the very factor the court in Plaintiffs' cited case found to be dispositive. Mot. at 15, *Ferrara v. Oakfield Leasing Inc.*, 904 F. Supp. 2d 249, 263 (E.D.N.Y. 2012) (finding the lack of "evidence that [two entities] appear to make joint hiring and firing decisions" to cut against a conclusion of centralized control of labor); *see also* DSF at ¶¶ 14-16. Plaintiffs are also flatly wrong that any employees "shifted back and forth" as that phrase is used in the supporting case law, which applies where employees are truly shared, and doing work on behalf of both companies. *Ferrara*, 904 F. Supp. 2d at 263. As the record evidence in the present case makes clear, any employee transitions were the result of hiring and firing decisions made by the relevant personnel from the respective company. RPSF at ¶¶ 62-63 ("Northern can hire people, and American can hire people. We don't transfer people. It is two separate companies."); *see also Laurin v. Pokoik*, 2004 WL 513999, at *5 (S.D.N.Y. Mar. 15, 2004) (finding a one-time transfer of employees an insufficient basis of interrelatedness); *Bd. of Trustees of Chicago Plastering Inst. Pension Trust Fund v. William A. Duguid Co.*, 761 F. Supp. 1345, 1357 (N.D.

13

Ill. 1991). Plaintiff cannot contend that any individual within the Accounting Department made any joint personnel decisions, set any policies, scheduled or bid on any jobs, set any employee schedules, determined the terms and conditions of any employee's employment, or otherwise had any role in controlling the labor of either company. *See* DSF at ¶¶ 5, 14-17, 23, 33-34. Plaintiffs cannot establish any control of labor period, and their Motion must be denied.

  **b.**   **Plaintiffs Are Without Any Record Evidence To Demonstrate That Defendants Had The Required Intent For Alter Ego Liability, And Can Do Nothing More Than Ask This Court To Draw An Impermissible Inference**

Plaintiffs also seek to have this Court find, in this summary judgment context, that American should be determined as the "alter ego" of Northern. Mot. at 16. Analysis of the alter ego doctrine is generally the same as the single employer doctrine, with the added element of intent to evade the employer's obligations under labor laws. *Boudreau*, 646 F. Supp. 2d at 1021. Thus, a critical and indeed essential requirement to the application of the alter-ego doctrine "is a finding of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as a sham transfer of assets." *Id.*, *citing Trustees of Pension Funds of Local 701 v. Favia,* 995 F.2d 785, 789 (7th Cir.1993). Put another way, this Court cannot apply the alter ego doctrine without first finding an unlawful motive or intent to exist on behalf of the Defendants. *See, e.g.*, *Chicago Dist. Council of Carpenters Pension Fund v. P.M.Q.T., Inc.*, 169 F.R.D. 336, 342 (N.D. Ill. 1996), citing *Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Centor Conts., Inc.,* 831 F.2d 1309, 1312 (7th Cir. 1987); *see also Chicago Dist. Council of Carpenters Pension Fund v. Sunshine Carpet Servs., Inc.*, 866 F. Supp. 1113, 1116 (N.D. Ill. 1994) ("the Seventh Circuit affords greatest weight to the second factor, the motive and intent of the shareholders.").

Putting aside the fact that Plaintiffs cannot establish any other factor that would support a

finding of alter ego liability (for all the reasons stated above), Plaintiffs are also without a shred of admissible record evidence to demonstrate the required intent or motive. Plaintiffs cannot point to any fact, testimony, or document reflecting this requisite intent. Plaintiffs know that to be true and do no more than ask this Court to "infer[]" the intent. Mot. at 18. Of course, such an inference would be entirely improper in this summary judgment context, as Plaintiffs' own case law makes clear. *Id.*, citing *Shales v. Lanas Const., Inc.*, 2009 WL 562607, at *5 (N.D. Ill. Mar. 4, 2009) ("the Funds ask the Court to infer from the fact that Mr. Lanas was involved in the management that he controlled labor operations for each of the companies. On summary judgment, however, an inference cannot be drawn against the non-moving party."). In sum, Plaintiffs cannot demonstrate American and Northern should be treated as a single employer and they certainly cannot provide the required intent for alter ego liability, beyond asking this Court to draw an entirely impermissible inference that is not supported by any admissible record evidence. For that reason alone, their Motion must be denied.

        **c.**         **Because Plaintiffs Cannot Come Forward With Any Uncontested Facts That Establish That American Is Either A Single Employer With, Or The Alter Ego Of Northern, Plaintiffs' Request For Joint And Several Liability Is A Non-Starter**

Plaintiffs' final point is more of an assumption that this Court will find American is both a single entity and the alter ego of Northern. Mot. at 19-20. For all of the reasons stated above, there are, at the very least, very few material facts <u>not</u> in dispute. There is no admissible record evidence to support a finding that American and Northern were anything more than two separate companies, with separate employees, separate jobs, and separate management. As a result, Plaintiff's Motion must be denied.[4]

---

[4] Plaintiffs also seek damages from January 1, 2004 to present. Even if this Court were to find Defendants liable in this summary judgment posture, Defendants' Affirmative Defenses would serve to

15

**WHEREFORE**, Defendants, by and through their undersigned counsel, respectfully request the entry of an Order denying Plaintiffs' Motion for Summary Judgment, and for such other and further relief as is appropriate under the circumstances.

**Dated: May 26, 2015**  **RESPECTFULLY SUBMITTED,**

By:/s/ Ethan E. White
Ethan E. White
Michael I. Leonard
LEONARD LAW OFFICES
203 North LaSalle, Suite 1620
Chicago, Illinois 60601
(312) 380-6634 (direct)
ewhite@leonardlawoffices.com
mleonard@leonardlawoffices.com

---

significantly limit Plaintiffs' recovery. Defendants have filed a Cross-Motion for Summary Judgment on those defenses (laches and waiver) and does not repeat those arguments here. *See Defendants' Amended Memorandum Of Law In Support Of Their Motion For Summary Judgment* at 9-11.

**CERTIFICATE OF SERVICE**

The undersigned certifies that on May 26, 2015, a true and correct copy of the foregoing *Defendants' Response To Plaintiffs' Motion For Summary Judgment* was sent, via electronic mail, to the addresses listed on Northern District of Illinois's CM/ECF system for all counsel of record.

**Dated: May 26, 2015**                **RESPECTFULLY SUBMITTED,**

By: /s/ Ethan E. White
    Ethan E. White
    LEONARD LAW OFFICES
    203 North LaSalle, Suite 1620
    Chicago, Illinois 60601
    (312) 380-6634 (direct)
    ewhite@leonardlawoffices.com