**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BOARD OF TRUSTEES of the PIPE FITTERS RETIREMENT FUND, LOCAL 597 *et al.*, | CASE NO. 13-CV- 8562 |
| Plaintiffs, | JUDGE: BLAKEY |
| vs. | MAGISTRATE JUDGE: FINNEGAN |
| NORTHERN WEATHERMAKERS HVAC, INC., an Illinois Corporation, and AMERICAN WEATHERMAKERS, INC. d/b/a NORTHERN WEATHERMAKERS, INC., an Illinois Corporation; | |
| Defendants. | |

**PLAINTIFFS' REPLY TO DEFENDANTS'**
**ADDITIONAL STATEMENTS OF MATERIAL FACTS**

NOW COMES the Plaintiffs, the BOARD OF TRUSTEES of the PIPE FITTERS RETIREMENT FUND, LOCAL 597 *et al.*, by and through their attorneys JOHNSON & KROL, LLC, and hereby respond to Defendants NORTHERN WEATHERMAKERS HVAC, INC. ("Northern") and AMERICAN WEATHERMAKERS, INC. d/b/a NORTHERN WEATHERMAKERS, INC.'s ("American") Additional Statement of Material Facts, pursuant to Local Rule 56.1(a)(3)(c), as follows:

1. Northern Weathermakers, Inc., the precursor to American. Pls.' Ex. 10 at 40:4-6.

    **RESPONSE:** This statement does not form a proper sentence because it contains no verb. As such, a response is impossible. However, to the extent Defendants are attempting to state that Northern Weathermakers, Inc. *is* the precursor to American, Plaintiffs admit the statement.

2. For more than 30 years, Northern Weathermakers, Inc. ("NWI") serviced only residential customers and employed non-union employees. That company was the predecessor of American Weathermakers, Inc., which services only residential customers and employs

1

non-union employees. Affidavit of Richard Hochschild, attached hereto as Exhibit C at ¶

**RESPONSE:** Denied. Plaintiffs dispute that American serves only residential customers and only employs non-union employees. Richard Hochschild testified that American performs some commercial work. (Dep. of Hochschild, p. 70 ¶ 22 and p. 71-73; PageID#:488-491).

3. Richard Hochschild decided to change the name of American (from Northern Weathermakers, Inc.) around 2001 based on what was essentially a marketing decision - namely that he wanted to further differentiate the brands and there was a sweep of patriotism in the U.S. that he thought would benefit our marketing. *Id.* at ¶ 3.

**RESPONSE:** Admitted.

4. Thus, for more than 30 years prior to 2001 and from that point forward, NWI/American did *only* residential, non-union work and Northern did commercial, union work. *Id.* at ¶ 4.

**RESPONSE:** Denied. Plaintiffs dispute that American serves only residential customers and only employs non-union employees. Richard Hochschild testified that American performs some commercial work. (Dep. of Hochschild, p. 70 ¶ 22 and p. 71-73; PageID#:488-491). Richard Hochschild also testified that Northern also performs some residential work. (Dep. of Hochschild, p. 67 ¶¶ 14-22; PageID#:485).

5. The Accounting function for American and Northern was centralized but has not role in the administration or management of either American or Northern. Pls.' Ex. 6 at 31:10-11, 40:21, 74:5-6; Ex. A at ¶¶ 3-11.

**RESPONSE:** Denied. Carmen Borrero "is in charge of HR and payroll for both companies." (Dep. of Hills, p. 12 ¶¶ 6-15; PageID#:616). In addition, Bojana Garfinkle is the Credit and Collections Manager and Safety Administrator for both Northern and American. (Dep. of Hills, p. 24 ¶¶ 12-16, p. 25 ¶¶ 1-24 and p. 26 ¶¶ 1-24; PageID#:628-630). In addition, Hills is the Vice President and Controller of both American and Northern. (Dep. of Hills, p. 76 ¶¶ 7-13; PageID#:680).

6. Northern reimburses American for the centralized Accounting department's time spent on Accounting functions for Northern. Ex. A at ¶ 32.

**RESPONSE:** Denied. Rather than reimburse American, Northern maintains a debt on its balance statement and American maintains a loan on its balance statement. (Dep. of Larry

2

Hills, p. 47 ¶¶ 6-13, p. 78 ¶¶ 10-24, p. 79 ¶¶ 22-23, and p. 81 ¶¶ 2-8; PageID#:651, 682-683, and 685); (Northern's year-end Balance Sheets for 2010-2012; PageID#:794-796); (American's year-end Balance Sheets for 2010-2012; PageID#:798-800).

7. Fredi Pilkati is a Northern employee who did not and does not work for American. Pls.' Ex. 10 at 46:10-14; *see also* Ex. C at ¶ 9.

   **RESPONSE:** Denied. The affidavit introduced by Defendants is contradicted by Defendants' own response to Plaintiffs' Rule 56.1 Statement of Facts ¶ 64. Plaintiffs' Rule 56.1 Statement of Facts stated "Fredi Pilkati is currently a delivery person and warehouse employee for Northern, but has performed some work on behalf of both Northern and American." (Defs.' Resp. to Pls.' Facts, 64; PageID#:1045). Defendants' responded "***Uncontested***." (*Id.*).

8. If Mr. Pilkati was paid $78.17 by American one time, Northern reimbursed American for that nominal payment. Ex. C at ¶ 9-11.

   **RESPONSE:** Denied for the same reasons stated above in Paragraph 7.

9. The Davis Business Software used by the centralized accounting function separate outs the distinct companies – i.e. American and Northern. Ex. A at ¶ 13.

   **RESPONSE:** Denied. Both the accounting records of American and Northern are maintained within the Davis Business Solutions software. (Dep. of Hills, p. 41 ¶¶ 9-12; PageID#:645).

10. Richard Hochschild is involved with the business of American, but not Northern. Pls.' Ex. 6 at 9:15-22. He performs marketing work for American, and does much of that work from outside the office, remotely. *Id.* at 10:1-7, 12:8-19. He does *not* perform marketing work for Northern. *Id.* at 11:6-9.

    **RESPONSE:** Admitted in part and denied in part. Admitted that Hochschild performs marketing work for American and not Northern. However, Plaintiffs deny that Mr. Hochschild is not involved with the business of Northern. Mr. Hochschild is the sole owner of Northern and sits on its Board of Directors. (Defs.' Resp. Pls.' Stmt. Facts, ¶¶ 16 and 18; PageID#:1033). In addition, Mike Lee, the president of Northern reports to Mr. Hochschild. (Dep. of Hochschild, p. 10 ¶¶ 18-22 and p. 11 ¶¶ 1-5; PageID#428-429). In addition, Mr. Hochschild has the power to give out "discretionary bonus[es]" which he can "award" to employees of both Northern and American. (Dep. of Hochschild, p. 81 ¶¶ 3-14; PageID#499).

11. Mr. Hochschild has an office within American, but not within Northern. *Id.* at 37:18-20.

    **RESPONSE:** Admitted.

12. Mr. Hochschild does not hire or fire employees from either American or Northern, and the last time Mr. Hochschild hired someone (an American employee) was nearly a decade ago. Ex. C at ¶¶ 6-7.

    **RESPONSE:** Admitted.

13. Mr. Hochschild is not involved in the day-to-day operations of either American or Northern – he does not work on any jobs, nor schedule any employees to work on jobs for either company. *Id.* at ¶ 8.

    **RESPONSE:** Denied. With regard to American, Hochschild testified "I'm involved on a day-to-day - - well, I have involvement with American Weathermakers, Inc. on a day-to-day basis." (Dep. of Hochschild, p. 9, ¶¶ 15-20; PageID#427).

14. Michael Lee, the President of Northern, has ultimate authority to hire or fire Northern employees. Ex. B at ¶ 2.

    **RESPONSE:** Admitted.

15. Larry Hills, the Vice-President and Controller of American, has the ultimate authority to hire or fire Accounting staff but has no role in supervising or directing any Northern employees. Ex. A at ¶¶ 3, 11.

    **RESPONSE:** Denied. Hills' accounting staff performs work on behalf of both Northern and American. (Dep. of Hills, p. 76 ¶¶ 9-13; PageID#:680).

16. Stephen Adamitis, Vice President of Operations for American, has the ultimate authority to hire or fire all other American employees (i.e. non-Accounting). *Id.* at 4.

    **RESPONSE:** Admitted.

17. American and Northern do *not* hold any joint meetings. Pls.' Ex. 6 at 41:6-42:4.

**RESPONSE:** Denied. The testimony cited by the Defendants does not assert that joint meetings were never held. On the contrary, Hochschild's testimony only refers to joint meetings in the conference room and cannot be asserted to apply to any other rooms and/or places in or out of the office. (Dep. of Hochschild, p. 41-42; PageID#459-460). In addition, on at least one occasion, employees of both American and Northern attended a conference together. (Dep. of Lee, p. 53, ¶¶19-24, p. 54, p. 55, ¶¶1-12; PageID#:590-592).

18. American's employees and Northern's employees have their own computers from their respective employers, and each company has its own office furniture and supplies. *Id.* at 47:3-12, 49:9-12.

    **RESPONSE:** Denied. The fact cited by Defendants misrepresents the testimony of Hochschild. When asked if an employee of American Weathermakers would have their own computer that belongs to American, Hochschild testified "I believe so." (Dep. of Hochschild, p. 47 ¶¶ 3-19; PageID#:465). This is far from affirmative knowledge. When asked if office equipment and furniture were owned by their respective entities, Hochschild testified "we haven't bought office furniture in so long, I can't tell you, you know." (*Id.*). The testimony never once represents that each company has its own furniture. (*Id.*). Finally, the testimony cited clearly states that when buying supplies, Carmen Borrero, a Northern employee, would buy supplies using American's account and bill it back to Northern. (Dep. of Hochschild, p. 48 ¶¶ 16-21, p. 49 ¶¶ 9-16; PageID#:466-467).

19. The warehouse is segregated and certain areas are only accessible to employees of American, and *vice versa*. *Id.* 53:15-54:1. Thus, certain areas are actually under "lock and key." Pls.' Ex. 10 at 19:22-20:9.

    **RESPONSE:** Admitted in part and denied in part. Plaintiffs admit that there are certain areas of the warehouse that are under lock and key. However, Plaintiffs deny the characterization that there are partitions which segregate the warehouse. (Dep. of Lee., p. 21 ¶¶ 5-13; PageID#:558). On the contrary, Mr. Lee testified that "I wouldn't say partition per se . . . I don't think there is a partition per se other than kind of the floor is kind of striped and worn." (*Id.*).

20. Northern does not have any employees in the warehouse. Pls.' Ex. 10 at 18:23-19:1.

    **RESPONSE:** Denied. The statement mischaracterizes the testimony. At any given time, there may be employees of both Northern and American in the warehouse because both Defendants share it. (Dep. of Lee, p. 21, ¶¶5-17, p. 23, ¶24, p. 24, ¶¶1-5, p. 34 ¶¶ 2-24 and p. 35 ¶¶ 1-11; PageID#:558, 560-561, 571-572); (Dep. of Hochschild, p. 51 ¶¶ 16-22 and p. 52, ¶¶ 1-8; PageID#469-470).

21. American and Northern do not share any vehicles. Pls.' Ex. 6 at 62:13-15; Pls.' Ex. 11 at 84:9-14; *see also* Ex. A at ¶¶ 37, 39; Ex. B at ¶ 13.

    **RESPONSE:** Denied. As presented in Plaintiffs' Statement of Undisputed Facts, on at least one occasion, a vehicle registered to American displayed a Northern Logo. (Photo of 2007 Chevrolet Express Van; PageID#:806); (Vehicle Registration Report; PageID#:808); (Dep. of Hochschild, p. 65 ¶¶ 12-22 and p. 66-67; PageID#:483-485).

22. A third-party, Enterprise Leasing, was in charge of registering the vehicles of American and Northern because the companies leased vehicles through Enterprise. Pls.' Ex. 6 at 63:2-6, 66:11-15, 66:20-67:1. In fact, Enterprise used its own address as the reported ownership/location of the vehicles. *Id.* 66:11-20.

    **RESPONSE:** Denied. The testimony reflects that Mr. Hochschild's testimony on this issue was speculative. Hochschild states "I thought Enterprise Leasing or the car dealers are in charge of that." (Dep. of Hochschild, p. 63 ¶¶ 2-16; PageID#:481). He further states, "I think we order them and they're mailed into us, if I'm not mistaken." (*Id.*). Moreover, this statement has no time frame and thus is in conflict with the Statement Number 20 in Defendants Rule 56.1 Statement of Facts, which states that American and Northern each own their own vehicles. Finally, in pages 66 through 67 of Mr. Hochschild's deposition, which Defendants cite, Mr. Hochschild is testifying about Deposition Group Exhibit 4, a public record obtained from LexisNexis. (Dep. of Hochschild, pp. 66-67; PageID#:484-485). Hochschild testifies that American is listed as the lessee on Exhibit 4. (*Id.*).

23. American and Northern do *not* share customers and they do *not* share or finish jobs for each other. Pls.' Ex. 6 at 68:14-22; Pls.' Ex. 10 at 50:10-13 ("Do you know if Northern and American in your capacity as the president of Northern share any customers? A. We do not."); *see also* Ex. A at ¶ 39; Ex. B at ¶ 13.

    **RESPONSE:** Admitted.

24. American and Northern separately account for "every penny." Pls.' Ex. 6 at 78:18-22 Northern "wouldn't pay for anything to do with American." Pls.' Ex. 10 at 32:8-9.

    **RESPONSE:** Denied. The testimony cited by the Defendants does not support the alleged facts asserted by the Defendants and grossly mischaracterizes the facts. First, the

statement that American and Northern separately account for "every penny" came after testimony that American purchases supplies and materials for Northern on a regular basis and bills back Northern. (Dep. of Hochschild, p. 47-49; PageID#:465-467). This fact is reflected on the balance sheet of Northern and American. (Dep. of Larry Hills, p. 47 ¶¶ 6-13, p. 78 ¶¶ 10-24, p. 79 ¶¶ 22-23, and p. 81 ¶¶ 2-8; PageID#:651, 682-683, and 685); (Northern's year-end Balance Sheets for 2010-2012; PageID#:794-796); (American's year-end Balance Sheets for 2010-2012; PageID#:798-800). Every balance sheet has a "Due to Affiliate" on Northern's statement and a "Due from Affiliate" on American's statement. (*Id.*). The amount due exceeded one million dollars in 2010, 2011, and 2012. (*Id.*). In addition, the bank statements and testimony of Larry Hills evidences the fact that at the end of the day, every single penny that Northern has is transferred to American's bank account. (Dep. of Hills, p.46 ¶¶ 1-5 and p. 47, ¶¶10-13 ; PageID#:650-651); (Northern's December 2013 Bank Account Statement; PageID#:771-776); (American's December 2013 Bank Account Statement; Page ID#:778-792).

25. American and Northern have separate bank accounts. Pls.' Ex. 11 at 34:7-13; *see also* Ex. A at ¶¶ 23.

    **RESPONSE:** Denied. At the close of business every day, all of the funds in Northern's bank account are transferred into an account maintained by American. (Dep. of Hills, p. 46 ¶¶ 1-5; PageID#:650);(Northern's December 2013 Bank Account Statement; PageID#:771-776); (American's December 2013 Bank Account Statement; Page ID#:778-792).

26. American's employees are paid by American, Northern's employees are paid by Northern, and the companies do not share employees. Pls.' Ex. 11 at 56:8-13; *see also* Ex. A at ¶ 21, 24; Ex. B at ¶ 12.

    **RESPONSE:** Denied. There are multiple employees who perform work on behalf of both Northern and American who are only paid by American. Specifically, employees within the "Hills Department." The Hills Department includes: Carmen Borrero, Bojana Garfinkle, Susana Melgar, Jamie Atkins, Diane Smith, and Michelle (last name unknown). (Dep. of Hills, p. 11 ¶¶ 13-24 and p. 12 ¶¶ 1-10, and pp. 22-33; PageID#:615-616 and 626-637).

27. Because of the restrictions and permissions placed on employees of the companies through their computer logins, American *cannot* access the data and files on the computers of Northern, and *vice versa*. Pls.' Ex. 10 at 26:16-27:9.

    **RESPONSE:** Denied. The seven employees in the Hills Department perform work on behalf of both Defendants, but are only employed by American. (Dep. of Hills, p. 11 ¶¶

13-24 and p. 12 ¶¶ 1-10, and pp. 22-33; PageID#:615-616 and 626-637).

28. American and Northern run their own separate businesses such that "they don't get involved with anybody on the other side." *Id.* at 33:12-34:6.

   **RESPONSE:** Denied. The seven employees in the Hills Department perform work on behalf of both Defendants, but are only employed by American. (Dep. of Hills, p. 11 ¶¶ 13-24, p. 12 ¶¶ 1-10, and pp. 22-33; PageID#:615-616 and 626-637).

29. American and Northern do not transfer employees between one another. *Id.* 48:19-49:2.

   **RESPONSE:** Denied. At least three employees have received wages from both Defendants: (1) Amanda Dechenne (formerly Amanda Sturino), (2) Anthony Borrero, and (3) Fredi Pilkati. (Dep. of Hochschild, p. 83 ¶¶ 17-22 and p. 84 ¶¶ 1-11, p. 86, ¶ 22 and p. 87 ¶¶ 1-22, and p. 88 ¶¶ 1-4; PageID#:501-502, 504-506); (Sturino 2010 W-2; PageID#:757); (Sturino 2010 Payroll; PageID#:759); (Sturino 2010 Wage Report; PageID#:761); (Borrero 2012 W-2; PageID#:763); (Borrero 2012 Payroll; PageID#:765); (Pilkati American Check Register; PageID#:767); (Pilkati Northern Payroll; PageID#:769). In addition, seven employees in the Hills Department perform work on behalf of both Defendants, but are only receive wages from American. (Dep. of Hills, p. 11 ¶¶ 13-24 and p. 12 ¶¶ 1-10, and pp. 22-33; PageID#:615-616 and 626-637).

30. American pays its own employees directly and issues them W-2 tax forms from American. Ex. A at ¶ 21.

   **RESPONSE:** Denied. Hills' accounting staff performs work on behalf of both Northern and American, and those employees only receive W-2 tax forms from American. (Dep. of Hills, p. 76 ¶¶ 9-13; PageID#:680).

31. Northern pays its own employees directly and issues them W-2 tax forms from Northern. Ex. B at ¶ 12.

   **RESPONSE:** Denied. Hills' accounting staff performs work on behalf of both Northern and American, and those employees only receive W-2 tax forms from American. (Dep. of Hills, p. 76 ¶¶ 9-13; PageID#:680).

32. Many other contractors working in the high-level area of HVAC services use the slogan "We won't be comfortable until you are." *See, e.g.*, Webpage of Bauernfeind Goedtel, *available at* http://bgcompanies.com/ (last visited May 21, 2015), attached hereto as Exhibit D; *see also* webpage of Pollard Heating and Air Conditioning, *available at*

http://www.pollarheatingandcooling.com/ (last visited May 21, 2015) attached hereto as Exhibit E.

**RESPONSE:** Denied. Defendants have made a purely speculative assertion based on two companies, located in Minnesota and Michigan to leap to the conclusion that "many" other contractors working in HVAC use the same slogan. In addition, neither of these documents has been authenticated and are inappropriate for summary judgment. In addition, these documents were not produced during discovery and should not be considered by this Court.

33. Mr. Hills' department is not involved in any job scheduling for either American or Northern, and never has been. Nor does it play any role whatsoever in logistics or dispatching any employees. Ex. A at at ¶ 7.

   **RESPONSE:** Denied. Ms. Garfinkle conducts fleet management for the vehicles of both companies, which is logistics and involves dispatching. (Dep. of Hills, p. 24 ¶¶12-24 and pp. 25-26; PageID#628-630); (Dep. of Hills, p. 30, ¶¶9-20,;PageID#634); (Dep. of Hills, p. 39, ¶6-11, PageID#643). For the purpose of dispatching, the Davis Business Solutions Software allows for the Hills Department to see where all the techs are at any given moment. (*Id.*).

34. American and Northern do not share customers, employees, vehicles, or jobs. Ex. A at ¶ 39, Ex. B at ¶ 13.

   **RESPONSE:** Denied. The asserted fact that both companies do not share employees is flatly a false assertion. The Hills Department consists of seven employees who perform work on behalf of both Northern and American. (Dep. of Hills, p. 11 ¶¶ 13-24 and p. 12 ¶¶ 1-10, and pp. 22-33; PageID #: 615-616, and 626-637). In addition, three employees not in the Hills Department have worked for both Northern and American: (1) Amanda Sturino, (2) Anthony Borrero, and (3) Fredi Pilkati. (Dep. of Hochschild, p. 83 ¶¶ 17-22 and p. 84 ¶¶ 1-11, p. 86, ¶ 22 and p. 87 ¶¶ 1-22, and p. 88 ¶¶1-4; PageID#: 501-502, 504-506); (Sturino 2010 W-2; PageID#:757); (Sturino 2010 Payroll; PageID#:759); (Sturino 2010 Wage Report; PageID#:761); (Borrero 2012 W-2; PageID#:763); (Borrero 2012 Payroll; PageID#:765); (Pilkati AMERICAN Check Register; PageID#:767); (Pilkati NORTHERN Payroll; PageID#:769). In addition, Northern and American have shared vehicles on at least one occasion. (Photo of 2007 Chevrolet Express Van; PageID#:806); (Vehicle Registration Report; PageID#:808); (Dep. of Hochschild, p. 65 ¶¶ 12-22 and p. 66-67; PageID #:483-485).

Respectfully Submitted,

**BOARD OF TRUSTEES OF THE PIPE FITTERS RETIREMENT FUND, LOCAL 597** *et al.*

/s/ Jeffrey A. Krol – 6300262
One of Plaintiffs' Attorneys

Jeffrey A. Krol
Matthew D. Grabell
**JOHNSON & KROL, LLC**
300 South Wacker Drive, Suite 1313
Chicago, Illinois 60606
(312) 757-5465
jeffkrol@johnsonkrol.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on today's date, Friday, June 19, 2015, he served a copy of the ***Plaintiffs' Reply to Defendants' Additional Statements of Material Facts*** on all parties via operation of the Court's CM/ECF filing system and a courtesy copy was delivered to the Court in accordance with the Local Rules.

/s/ Jeffrey A. Krol – 6300262
One of Plaintiffs' Attorneys
