# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

BOARD OF TRUSTEES OF THE
PIPE FITTERS RETIREMENT FUND,
LOCAL 597, *et al.*,

              Plaintiffs,

            v.

AMERICAN WEATHERMAKERS, INC.
and NORTHERN WEATHERMAKERS
HVAC, INC.,

              Defendants.

Case No. 13 C 8562

Judge John Robert Blakey

## <u>MEMORANDUM OPINION AND ORDER</u>

Pursuant to Section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145, and Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, Plaintiffs sued Defendants American Weathermakers, Inc. ("American Weathermakers") and Northern Weathermakers HVAC, Inc. ("Northern Weathermakers HVAC") to collect delinquent fringe benefit contributions. Defendants are related through common ownership. Plaintiffs are The Pipe Fitters Association, Local 597 U.A. ("Union"), which is the bargaining representative for certain Northern Weathermakers HVAC employees, PSOF ¶ 6, and the administrators of five funds: Board of Trustees of the Pipe Fitters Retirement Fund, Local 597; Board of Trustees of the Pipe Fitters Welfare Fund, Local 597; Board of Trustees of the Pipe Fitters Training Fund, Local 597; Board of Trustees of the Chicago Area Mechanical Contracting Industry Improvement Trust; Board of

Trustees of the Pipe Fitters Individual Account and 401(k) Plan; and Board of Trustees of the Pipe Fitting Council of Greater Chicago.

Northern Weathermakers HVAC signed a November 29, 2001 Subscription Agreement, and, in accordance with the Subscription Agreement, has been making fringe benefit contributions pursuant to the Collective Bargaining Agreement negotiated between the Union and the Mechanical Contractors Association. American Weathermakers, which is affiliated with Northern Weathermakers HVAC through common ownership, did not sign the November 29, 2001 Subscription Agreement and has not been making Collective Bargaining Agreement contributions. Nonetheless, if American Weathermakers and Northern Weathermakers HVAC are a "single employer" under the law, then American Weathermakers will be equally liable under the Collective Bargaining Agreement. *See Moriarty v. Svec*, 164 F.3d 323, 332 (7th Cir. 1998); *see also Moriarty v. Svec*, 994 F. Supp. 963, 968-69 (N.D. Ill. 1998), *vacated on other grounds*, 164 F.3d 323 (7th Cir. 1998).

The parties have cross-moved for summary judgment on the issue of liability. For the following reasons, Defendants are a single employer, so Plaintiffs' summary judgment motion [42] is granted, and Defendants' cross-motion [45] [48] is denied.

## I.    Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir.

2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party, here, each side with respect to the other's motion. *See CTL ex rel. Trebatoski v. Ashland School District*, 743 F.3d 524, 528 (7th Cir. 2014).

## II. Facts[1]

On November 29, 2001, Northern Weathermakers HVAC entered into a Subscription Agreement with the Union, agreeing to be bound by the provisions of the Collective Bargaining Agreement, and all successor agreements, negotiated between the Union and the Mechanical Contractors Association. PSOF ¶ 4. American Weathermakers did not sign the Subscription Agreement. *See* Subscription Agreement [44-3]. Through the Collective Bargaining Agreement, Northern Weathermakers HVAC became bound by the provisions of certain Trust Agreements. PSOF ¶ 5. Pursuant to the Collective Bargaining Agreement and the Trust Agreements, Northern Weathermakers HVAC must make monthly reports of

---

[1] The facts are taken from the parties' Local Rule 56.1 statements and the exhibits thereto. "DSOF" refers to Defendants' statement of undisputed facts [49], with Plaintiffs' responses [55]. "DSOAF" refers to Defendants' statement of additional facts [52], with Plaintiffs' responses [61]. "PSOF" refers to Plaintiffs' statement of facts [44], with Defendants' responses [52]. "PSOAF" refers to Plaintiffs' statement of additional facts [65], with Defendants' responses [66].

hours worked by employees working within the Trade and Geographical Jurisdiction of the Union. PSOF ¶ 7. Northern Weathermakers HVAC also must contribute to the Trust Funds (which were created by the Trust Agreements), the Chicago Area Mechanical Contracting Industry Improvement Trust and the Pipe Fitting Council of Greater Chicago for each hour those employees worked at the negotiated rates. PSOF ¶¶ 5, 7.

In Subsection A, this Court sets forth the factual record relevant to determining whether American Weathermakers and Northern Weathermakers HVAC constitute a single employer for the purposes of the instant motions. In Subsection B, this Court sets forth the factual record relevant to Defendants' three affirmative defenses, that is, when did Plaintiffs learn that they had a potential single employer claim against Defendants.

## A. Relationship between Northern Weathermakers HVAC and American Weathermakers

Northern Weathermakers, Inc. was incorporated on December 30, 1955, and it is the predecessor of both American Weathermakers and Northern Weathermakers HVAC. DSOF ¶ 3; DSOAF ¶¶ 1-2; PSOF ¶ 12. Northern Weathermakers HVAC and American Weathermakers were incorporated on September 26, 1988 and December 19, 2002, respectively. DSOF ¶ 4; PSOF ¶¶ 13-14. Northern Weathermakers, Inc. is no longer in business. DSOAF ¶¶ 3-4.

Richard Hochschild is the sole owner of both American Weathermakers and Northern Weathermakers HVAC. DSOF ¶ 1; PSOF ¶ 16. Hochschild is the President of American Weathermakers, and is on the Board of Directors of both

4

companies. PSOF ¶¶ 17-18. Hochschild testified that he is involved in the "day-to-day" operations of American Weathermakers, but not Northern Weathermakers HVAC. Hochschild Dep. [44-6] at 9; *see also* DSOF ¶ 5. Hochschild, however, neither hires nor fires employees at either company. DSOAF ¶ 12.

Michael Lee is the President of Northern Weathermakers HVAC, and, despite being "in charge of the [common] computer server" for both companies, holds no official title with American Weathermakers. DSOF ¶ 11; Hochschild Dep. [44-6] at 40. Lee, unlike Hochschild, has the ultimate authority to hire and fire Northern Weathermakers HVAC employees. DSOAF ¶ 14. Stephen Adamitis, the Vice President of Operations at American Weathermakers, has the ultimate authority to hire and fire American Weathermakers employees (except for those in the Hills Department, as discussed below). DSOAF ¶ 16.

American Weathermakers and Northern Weathermakers HVAC provide, in general terms, heating, ventilation and air conditioning ("HVAC") services in the Chicagoland area. PSOF ¶¶ 19, 23. They use the same slogan ("We won't be comfortable until you are") and their logos, perhaps in homage to a shared heritage, state: "Since 1949." PSOF ¶ 24. Despite serving the same geographic market, the companies service different customers. DSOF ¶ 21; DSOAF ¶ 34. Northern Weathermakers HVAC almost exclusively performs commercial work, whereas American Weathermakers performs residential work. DSOF ¶ 2; DSOAF ¶ 2; PSOF ¶ 20. To be sure, American Weathermakers performs some work for

condominium associations, but the parties disagree about whether that work is properly classified as commercial or residential. DSOF ¶ 4; DSOAF ¶ 4; PSOF ¶ 21.

Both companies are housed in the same building located at 335-341 Anthony Trail, Northbrook, Illinois, where they share a parking lot but have separate entrances. DSOF ¶¶ 7-8; PSOF ¶ 25. Hochschild owns both the building and the parking lot. PSOF ¶ 26. The building includes segregated office space for each company as well as shared spaces. American Weathermakers is located on the north end of the building, and Northern Weathermakers HVAC is located on the south end. DSOF ¶ 10; Response to PSOF ¶ 28; Lee Dep. [44-10] at 12-13. There are common bathrooms and a common conference room, file room, internal hallway, kitchen and training room. PSOF ¶¶ 28, 30-33; Lee Dep. [44-10] at 13-15. The two companies also share a warehouse. DSOF ¶ 16; PSOF ¶ 27.

Beyond shared physical space, American Weathermakers and Northern Weathermakers HVAC share employee benefit plans, infrastructure and third-party outside services:

- a 401(k) retirement plan administered by American Weathermakers;

- an outside accountant, Craig & Associates, LLC;

- a Sprint cell phone plan with American Weathermakers as the account holder;

- a computer server;

- an email server;

- a Blue Cross Blue Shield healthcare plan with American Weathermakers as the plan sponsor;

- an inter-office telephone system;

- software licenses;

- workers' compensation insurance; and

- a 2007 Chevrolet Express Van registered to American Weathermakers but used by Northern Weathermakers HVAC and depicting the Northern Weathermakers HVAC logo.

PSOF ¶¶ 34-35, 38, 40-42, 44, 50, 65-67, 77. While the companies share a computer server, American Weathermakers employees cannot access the data and files on Northern Weathermakers HVAC computers, and *vice versa*. DSOF ¶ 26. Employees at both companies have email addresses ending with: @ac.heat.net. PSOF ¶¶ 38-39. By sharing an inter-office telephone system, employees at Northern Weathermakers HVAC can reach employees at American Weathermakers by dialing their four-digit extensions only—and not their full telephone number, as outsiders would have to do. PSOF ¶ 37. As for the software licenses, while only American Weathermakers holds licenses to use Microsoft Office and Davis Business Solutions (accounting software)—the primary software used at both companies— both companies share those licenses.[2] PSOF ¶¶ 40-42. Except for the 2007

_____

[2] With limited exceptions not raised here, a party cannot create a genuine issue of material fact by merely contradicting admissions in prior sworn testimony, such as interrogatory responses. *Richardson v. Bonds*, 860 F.2d 1427, 1433 (7th Cir. 1988); *Silic v. BBS Trucking, Inc.*, No. 12-6557, 2014 WL 4783849, at *4-5 (N.D. Ill. Sept. 24, 2014). That is what Defendants have done, however, with respect to their Responses to PSOF ¶¶ 40, 42, 56; and this Court thus disregards those Responses. By way of example, in PSOF ¶ 42, Plaintiffs, citing to the separate Interrogatory responses provided by American Weathermakers and Northern Weathermakers HVAC, correctly state that "the Microsoft Office and Davis Business Solutions software … are only licensed to AMERICAN." On October 6, 2014, Hills (and others) signed a sworn "Affidavit of Completeness" for both sets of Interrogatory responses, swearing that they answered the Interrogatories in accordance with Federal Rules of Civil Procedure 26 and 33. Northern Weathermakers HVAC

Chevrolet Express Van, the two companies do not otherwise share vehicles. DSOAF ¶¶ 21, 34.

American Weathermakers and Northern Weathermakers HVAC, moreover, share a centralized department, called the "Hills Department" after the department's supervisor, Larry Hills, which is responsible for accounting and human resources, among other tasks. DSOAF ¶ 5; PSOF ¶¶ 45-46, 51. Hills is a Vice President and the Controller at American Weathermakers. DSOF ¶ 13; PSOF ¶ 46. Other members of the Hills Department include Carmen Borrero, Bonjana Garfinkle and Susana Melgar. PSOF ¶ 47. American Weathermakers pays Hills Department members, and Northern Weathermakers HVAC reimburses American Weathermakers for the time the Hills Department spends on Northern Weathermakers HVAC tasks. DSOAF ¶ 6.

With respect to accounting, the Hills Department maintains and prepares accounting records, such as financial statements and reports of accounts payable and receivable, for both companies. PSOF ¶¶ 48, 57, 61. Hills, in fact, has signed tax documents, including 2009 Form 1096s, on behalf of both companies, and, despite not holding a title with Northern Weathermakers HVAC, signed and listed his title as "VP Controller" on Northern Weathermakers HVAC's 2009 Form 1096. PSOF ¶ 49; Hills Dep. [44-11] at 76; Northern Weathermakers HVAC 2009 Form

---

Interrogatory Answers [44-17] at 17; American Weathermakers Interrogatory Answers [44-18] at 16. Yet, in their Response to PSOF ¶ 42, Defendants cite the Affidavit of Larry Hills [52], which was signed on May 26, 2015, after the parties had filed their cross-motions for summary judgment. In his Affidavit, Hills now states that *both* companies hold licenses to use Microsoft Office and Davis Business Solutions. Hills Aff. [52] ¶ 12. That type of contradiction cannot now create a genuine issue of material fact.

1096 [44-19]. When asked about giving his title as "VP Controller" on Northern Weathermakers HVAC's 2009 Form 1096, Hills testified:

> I work for American Weathermakers. I perform accounting for both companies, and I signed it. So I am the control -- I perform controller functions for both companies, and I signed it as such.

Hills Dep. [44-11] at 74-76.

In addition to accounting, the Hills Department performs human resources and other functions for both companies. For example, Borrero maintains payroll and acts as the facility manager for both companies. PSOF ¶¶ 47, 51-53. As the facility manager, Borrero purchases all office supplies for both companies. PSOF ¶ 53.

Garfinkle, another Hills Department member, is the Credit and Collections Manager at American Weathermakers. PSOF ¶¶ 46, 54. She prepares job invoices and conducts fleet management for both companies. PSOF ¶ 55. Garfinkle also serves as the safety administrator for both companies, editing and circulating the companies' safety manual, among other responsibilities. PSOF ¶ 56.

The companies both bank at Northbrook Bank & Trust Company. PSOF ¶ 68. The companies have separate bank accounts, yet, at the end of each day, the funds in Northern Weathermakers HVAC's account are "zeroed out" and automatically transferred to American Weathermakers' bank account. DSOF ¶ 23; PSOF ¶ 69. As a result, certain of Northern Weathermakers HVAC's account payables are paid out of American Weathermakers' bank account. PSOF ¶¶ 71-72. Both companies include line items on their balance sheets ("Due to Affiliate" and

"Due from Affiliate") to reflect these transfers and payments. PSOF ¶¶ 72-73. The balance sheets show that in 2010, 2011 and 2012, Northern Weathermakers HVAC owed American Weathermakers $1,065,000, $1,338,000 and $1,076,000 (all numbers approximate), respectively. PSOF ¶ 73. When discussing the balance sheets, Hills agreed with Plaintiffs' counsel's characterization that American Weathermakers was loaning money to Northern Weathermakers HVAC. Hills testified:

> Q. And on some occasions, Northern does not have sufficient capital to pay its debts and it receives a loan from American; is that correct?
> …
> A. Yes

Hills Dep. [44-11] at 81; *see also* PSOF ¶ 73.

For completeness, this Court adds that the above recitation of facts excludes statements of fact that, based on this Court's review of the responses and the record, lack sufficient support (or otherwise are irrelevant to the issues at hand). For example, Plaintiffs argue that two employees (Anthony Borrero and Amanda Dechenne) received W-2s from Northern Weathermakers HVAC while on American Weathermakers' payroll. PSOF ¶¶ 62-63. Plaintiffs also argue that two other employees (Jamie Atkins and Diane Smith, who are both members of the Hills Department) perform tasks for both companies. PSOF ¶¶ 59-60. This Court finds no factual support for these allegations.

## B.     Plaintiffs' Knowledge of Defendants' Relationship

Jillian Rymek, an auditor for the Funds, explained that Plaintiffs audit each employer, such as Northern Weathermakers HVAC, every three years.  DSOF ¶ 30; Rymek Dep. [46-1] at 21, 94-95.  Nearly consistent with that explanation, Rymek audited Northern Weathermakers HVAC in 2009 and 2013.  DSOF ¶¶ 30, 46.

During the 2009 audit, Rymek, as part of her standard audit questions, asked Borrero, a Hills Department member who was present for the audit, whether Northern Weathermakers HVAC had any related entities.  DSOF ¶ 31; Response to DSOF ¶ 30 (citing Rymek Dep. [46-1] at 23-24); PSOF ¶ 47; Rymek Dep. [46-1] at 29-30, 32-33.   Rymek  testified  that  Borrero  gave  her  a  list  of  related  entities, including American Weathermakers:

> Q. As you sit here today under oath thinking back five years ago to '09, is there anything you remember that you said to Carmen [Borrero] or Carmen said to you as any part of that whole audit process of Northern Weathermakers?
>
> A. Related entities.  There was discussion on that.
>
> …
>
> Q. And what did Carmen say in response?
>
> A. She gave me a list of different contractors that they are also related by common ownership, and she listed a few of them.
>
> Q. So back in '09 she identified for you American Weathermakers?
>
> A. Yes.
>
> Q. And what did she say about American Weathermakers back in 2009?
>
> A. I questioned the nature of the services they provide.
>
> …
>
> Q. Okay.  In regard to that particular question, what did Carmen say in response back in 2009?

A. It is a non-union residential HVAC shop.

Rymek Dep. [46-1] at 25, 30-31; *see also* DSOF ¶ 31.

Following the audit and also in 2009, Rymek called Gregory Watson, President and Collections Coordinator for the Funds. DSOF ¶¶ 32-33, 37; Rymek Dep. [46-1] at 32. Rymek informed Watson about American Weathermakers to determine if Watson wanted her to note the company in the audit report or investigate American Weathermakers further. DSOF ¶ 32; Rymek Dep. [46-1] at 33-34. Watson did not give Rymek an answer that day, but later told Rymek that she should make a notation on the audit report, and the Funds would look into the issue later. DSOF ¶ 35; Rymek Dep. [46-1] at 38. Rymek made that notation, stating (as she put it in her deposition): "there is a non-union HVAC residential shop related by common ownership to Northern Weathermakers." DSOF ¶ 35; Rymek Dep. [46-1] at 39.

Rymek testified that, in the normal course, she sent her audit reports, such as the 2009 audit report about Northern Weathermakers HVAC, to her supervisor who, in turn, passed the reports along to the Board of Trustees of the Funds. Response to DSOF ¶ 36; Rymek Dep. [46-1] at 44-46. Watson did not recall whether he received Rymek's 2009 audit report, explaining that he may have been out of the office when the report was sent. Response to DSOF ¶ 38. No one asked Rymek to follow-up on American Weathermakers as a result of her 2009 audit report. DSOF ¶ 34.

Defendants make other factual allegations about Plaintiffs' purported knowledge of American Weathermakers' relationship to Northern Weathermakers HVAC, *see* DSOF ¶¶ 38-42, 47, but those allegations overstate the cited record or are not supported by the record at all. In particular, Defendants allege that the "Funds knew that American [Weathermakers] was … not making contributions since at least 2005 or 2006," DSOF ¶ 41, but that is not supported by the record. These statements of fact thus are discounted or disregarded as appropriate.

## III. Analysis

In Subsection A, this Court analyzes whether American Weathermakers and Northern Weathermakers HVAC are a single employer under ERISA. Because this Court finds that they are a single employer, in Subsection B, this Court analyzes whether Defendants nonetheless can escape liability through their affirmative defenses of estoppel and laches, and waiver. They cannot.

### A. Single Employer

Under the single employer doctrine, when two entities are sufficiently integrated, they will be treated as a single entity for certain purposes. *Lippert Tile Co., Inc. v. International Union of Bricklayers & Allied Craftsmen, District Council of Wisconsin & Its Local 5*, 724 F.3d 939, 946 (7th Cir. 2013). When two businesses are a single employer under the law, then both businesses will be equally liable under a collective bargaining agreement entered on behalf of only one of them. *Moriarty*, 164 F.3d at 332.

To determine whether two separate companies are a single employer under the law, this Court must examine four factors: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership. *Lippert Tile*, 724 F.3d at 946; *Moriarty v. Svec*, 164 F.3d 323, 332 (7th Cir. 1998). No single factor is conclusive; instead, this Court must weigh the totality of the circumstances. *Lippert Tile*, 724 F.3d at 946-47. Ultimately, single employer status is characterized by the "absence of an arm's length relationship found among unintegrated companies." *Id.* at 947 (internal quotations omitted).

The four factors show that American Weathermakers and Northern Weathermakers HVAC constitute a single employer. Under the first factor, when analyzing the interrelation of operations, it is the "day-to-day operational matters" that are most relevant. *Lippert Tile*, 724 F.3d at 947.

Instructive is the Seventh Circuit's decision in *Lippert Tile*, 724 F.3d at 942, 946-48, which found that the union (Lippert Tile) and non-union (DeanAlan) corporate defendants, and their management company (Lippert Group), were a single employer under analogous circumstances. Lippert Tile and DeanAlan performed the same type of work (tile installation) in the same region (Milwaukee), but they did so for different customers segments (the union and non-union markets). *Id.* at 942, 948. Unlike here, the companies also had separate bank accounts, corporate officers, employees, insurance programs and office space. *Id.* at 942. Yet the Seventh Circuit nonetheless concluded that the companies were a single employer because they shared certain daily operations that were critical to

the smooth functioning of their work. *Id.* at 947. The Court emphasized that, under the first factor, Lippert Group maintained business records, processed payroll, handled billing and managed the bank accounts for both Lippert Tile and DeanAlan. *Id.* at 942, 947. Lippert Group also decided which company should bid on which project and, if so, what to bid. *Id.* at 947. The analysis of the first factor guided the Court's analysis of the other three factors. *See id.* at 947-48.

Like Lippert Group, here, the Hills Department is responsible for accounting, billing and human resources for both American Weathermakers and Northern Weathermakers HVAC. DSOAF ¶ 5; PSOF ¶¶ 45-46, 51. The Hills Department prepares and maintains accounting records for both companies. PSOF ¶¶ 48, 57, 61. Both companies use the same outside accountant. PSOF ¶ 50. Hills—a Vice President and the Controller for American Weathermakers—also signed federal tax documents for both companies, despite not holding a formal title with Northern Weathermakers HVAC. PSOF ¶ 49; Hills Dep. [44-11] at 74-76; Northern Weathermakers HVAC 2009 Form 1096 [44-19]. As for billing and human resources, the Hills Department maintains payroll, prepares billing invoices and purchases supplies for both companies. PSOF ¶¶ 46-47, 51-55. The Hills Department does not decide which company will bid on a project, unlike the Lippert Group, but the totality of the circumstances here nonetheless is more compelling than in *Lippert Tile*.

Beyond the Hills Department, American Weathermakers and Northern Weathermakers HVAC both bank at Northbrook Bank & Trust Company. PSOF ¶

15

68.  While they have separate bank accounts, at the end of each day, the funds in Northern Weathermakers HVAC's account automatically "zero out" and transfer to American Weathermakers' account.  DSOF ¶ 23; PSOF ¶ 69.  As a result, certain of Northern Weathermakers HVAC's account payables are paid out of American Weathermakers' bank account, which Hills has characterized as "loans."  PSOF ¶¶ 71-73; Hills Dep. [44-11] at 81.  According to the balance sheets, Northern Weathermakers HVAC owed American Weathermakers more than $1,000,000 in each of 2010, 2011 and 2012.  PSOF ¶ 73.

More is not needed to show an interrelation of operations, yet there is more.  Both companies, to leverage their combined purchasing power and economies of scale, share the same benefit plans, infrastructure, office space and third-party outside services.  This specifically includes, but is not limited to, a cell phone plan, an email server, employee benefit plans, insurance, an inter-office telephone system and software licenses.  DSOF ¶¶ 7-8, 16; PSOF ¶¶ 25, 27-28, 30-35, 37-39, 40-42, 44, 65-67, 77; Lee Dep. [44-10] at 13-15.  In both *Central States, Southeast & Southwest Areas Pension Fund v. George W. Burnett, Inc.*, 451 F. Supp. 2d 969, 976 (N.D. Ill. 2006), and *Moriarty*, 994 F. Supp. at 969-70, the Courts found some of the same factors to be persuasive evidence of an interrelation of operations.  *See also Boudreau v. Gentile*, 646 F. Supp. 2d 1016, 1021 (N.D. Ill. 2009) (companies shared the same address and phone and fax numbers).  So does this Court.

Defendants emphasize that they maintain separate records for one another and do not comingle funds or share employees.  American Weathermakers pays

Hills Department members, so Northern Weathermakers HVAC reimburses American Weathermakers for the time Hills Department members spend on accounting functions for Northern Weathermakers HVAC. DSOAF ¶ 6. Another example is that Defendants include line items on their balance sheets to record the automatic transfers between their bank accounts. PSOF ¶¶ 72-73. Citing to *In re World Access, Inc.*, 301 B.R. 217, 271 (Bankr. N.D. Ill. 2003), Defendants further argue that there is nothing improper about using zero balance accounts.

Perhaps these facts would rebut an argument that Defendants do not adhere to corporate formalities or have engaged in fraud, but they do not show that American Weathermakers and Northern Weathermakers HVAC have an "arm's length relationship," as required for them to defeat a single employer theory of liability. *See Lippert Tile*, 724 F.3d at 947. Quite the opposite is true. The fact that Defendants coordinate resources confirms the absence of an arm's length relationship found among unintegrated companies. *See Burnett, Inc.*, 451 F. Supp. 2d at 976; *Moriarty*, 994 F. Supp. at 969-70. In *Moriarty*, 994 F. Supp. at 969-70, the Court granted summary judgment for the funds, finding two funeral services companies to be a single employer. As here, one company performed maintenance and other services for the other in exchange for payment. *Id.* Coordinating resources thus is a telling sign of integration.

Of the remaining factors, the second and fourth factors confirm that American Weathermakers and Northern Weathermakers HVAC are a single employer, and the third factor cannot overcome this conclusion. As shown by

*Lippert Tile*, 724 F.3d at 947, the integral administrative role the Hills Department plays at both companies satisfies the second factor—common management. Creating another layer of common management is Hochschild. Hochschild serves as the President of American Weathermakers and sits on the Board of Directors for both companies. DSOF ¶ 1; PSOF ¶¶ 16-18. The fourth factor, common ownership, is straightforward. Hochschild is the sole owner of both Northern Weathermakers HVAC and American Weathermakers. DSOF ¶ 1; PSOF ¶ 16.

Against the first, second and fourth factors, the third factor, the centralized control of labor relations, may favor Defendants but certainly not by enough to change the outcome. The centralized control of labor relations means whether the companies share responsibility for making day-to-day labor relations decisions, such as setting wages, hiring and firing. *Lippert Tile*, 724 F.3d at 947. Here, different people at Northern Weathermakers HVAC and American Weathermakers have the ultimate power to hire and fire employees. DSOAF ¶¶ 14, 16. Setting aside the Hills Department and Lee (and these are significant exceptions), the companies also do not share employees or transfer employees between one another, *see* DSOF ¶ 29, and the record does not show that they jointly set wages. Nonetheless, as in *Lippert Tile*, 724 F.3d at 947-48, this single outlier factor does not overcome the totality of the other three factors given the coordination between both companies along multiple parameters.

For all of these reasons, American Weathermakers and Northern Weathermakers HVAC are a single employer, and American Weathermakers is

bound to make contributions pursuant to the November 29, 2001 Subscription Agreement.[3]

## B.    Affirmative Defenses

To avoid liability, Defendants alternatively move for summary judgment on their affirmative defenses of estoppel and laches, and waiver. Defendants bear the burden of proof. *Bauer v. J.B. Hunt Transport, Inc.*, 150 F.3d 759, 763 (7th Cir. 1998). This Court considers the affirmative defenses in turn, and concludes that none has merit.

### 1.    Laches and Estoppel (Affirmative Defense Nos. 1 and 3)

Defendants jointly raise their related affirmative defenses of laches and estoppel, and argue that they rise and fall together. Defendants argue that Plaintiffs waited too long before bringing this lawsuit, having heard the name "American Weathermakers" as early as 1997 and having learned during the 2009 audit that American Weathermakers and Northern Weathermakers HVAC are related by common ownership. DSOF ¶¶ 31, 40; Response to DSOF ¶ 30 (citing Rymek Dep. [46-1] at 23-24); PSOF ¶ 47; Rymek Dep. [46-1] at 29-30, 32-33. Rymek, who conducted the 2009 audit, noted this relationship in her 2009 audit report. DSOF ¶ 35; Rymek Dep. [46-1] at 38. Plaintiffs respond that laches, as a

---

[3] Because the single employer finding disposes of the question of liability, this Court need not address Plaintiffs' alter ego theory of liability. The alter ego doctrine is more demanding than the single employer doctrine because the former involves questions of motive and intent. *Central States, Southeast & Southwest Areas Pension Fund v. Central Transportation, Inc.*, 85 F.3d 1282, 1288 (7th Cir. 1996). The Seventh Circuit has not held that this Court must apply any one doctrine in determining whether an employer owes contributions under ERISA, so this Court declines to undertake this more demanding, but here unnecessary, analysis. *Moriarty*, 164 F.3d at 332 n.9; *see also Burnett*, 451 F. Supp. 2d at 977 n.3 (also declining to consider the alter ego theory).

matter of law, is an unavailable defense in ERISA contribution cases; and that, in any event, the defense fails on its merits. This Court need not reach the unsettled question of whether laches is available as a defense in this case, *see Teamsters & Employers Welfare Trust of Illinois v. Gorman Brothers Ready Mix*, 283 F.3d 877 (7th Cir. 2002), because it agrees that the defense fails on the merits.

Laches comprises two elements: (1) Plaintiffs unreasonably delayed in asserting their rights; and (2) that delay harmed Defendants. *Gorman Brothers*, 283 F.3d at 880. Neither element is met here.

To show an unreasonable delay, this Court begins by determining when Plaintiffs first knew, or reasonably could have known, that they had a single employer cause of action. *Central States, Southeast & Southwest Areas Pension Fund v. Kroger Co.*, No. 01-2680, 2004 WL 2452737, at *10-13 (N.D. Ill. Nov. 1, 2014) (rejecting the defendant company's laches defense). *Kroger* instructs that this Court should not stretch the reasonable boundaries of knowledge to conclude that a fund knew it had a cause of action. In that case, the defendant employer, to support its laches defense, argued that the fund first learned that it had an ERISA contribution claim (or at least should have conducted further investigation) when the fund's audit of the company's Indianapolis facility revealed the same employee reclassification problems later found in the company's Atlanta facility. *Id.* at *10-11. The problems at the Atlanta facility led to the lawsuit. Yet the Court declined to find that the fund's knowledge of problems at one facility placed it on notice of problems at another. *Id.* Drawing that inference would create an untenable

outcome, placing the fund on "almost perpetual notice to continuously investigate each and every locale." *Id.* at *10.

Here, Defendants ask this Court to conclude that Plaintiffs had a single employer claim once they learned, in response to a standard question, that American Weathermakers and Northern Weathermakers HVAC were related through common ownership. Rymek also learned during the 2009 audit that American Weathermakers provided services similar to Northern Weathermakers HVAC. DSOF ¶ 31; Rymek Dep. [46-1] at 25, 30-31. But common ownership satisfies just one of the four factors for finding a single employer relationship and two companies providing similar services do not by themselves satisfy any. Without more, this knowledge, let alone Plaintiffs knowing only the name "American Weathermakers" in 1997, would not have supplied a reasonable basis for bringing suit.

Nor can Defendants prevail on their argument that Plaintiffs had a duty to conduct further investigation following the 2009 audit. As in *Kroger*, creating a rule that funds have a duty to investigate all commonly held companies imposes too demanding of a duty to investigate. For these reasons, this Court has no basis for concluding that Plaintiffs unreasonably delayed in asserting their rights.

Even had there been an unreasonable delay, there was no resulting harm to Defendants. Defendants argue that they would have taken steps to avoid contribution liability and the associated fees had they known of Plaintiffs' claim sooner. The only steps Defendants could have taken, however, would have been to

make the contributions now in dispute.  For this reason, the Sixth Circuit rejected the same allegation of prejudice by the employer in *Brown-Graves Co. v. Central States, Southeast & Southwest Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000).  Citing to *Brown-Graves*, so did the Courts in *Kroger*, 2004 WL 2452737, and *Lauer v. Fortune Management*, No. 12-291, 2015 WL 2340749, at *8 (N.D. Ind. May 14, 2015).  This Court concurs with this line of cases.  For these two reasons, Defendants' estoppel and laches defenses fail together.

### 2.    Waiver (Affirmative Defense No. 2)

Defendants next argue, albeit in a cursory manner, that Plaintiffs waived any single employer claim.  Assuming that waiver is an available defense in ERISA contribution claims, which Plaintiffs dispute and this Court need not decide, the defense also fails on the merits.

Waiver is the "voluntary and intentional relinquishment of a known right," and it may be made by an express agreement or implied from conduct that is inconsistent with an intention to assert that right.  *Delta Consulting Group, Inc. v. R. Randle Construction, Inc.*, 554 F.3d 1133, 1140 (7th Cir. 2009).  Defendants do not point to any express agreement or inconsistent conduct, and this Court has not identified either from the record.  As discussed above, the record does not show that Plaintiffs learned they had a single employer claim before 2013, when they conducted a second audit and filed suit.  Even had Plaintiffs learned of their claim sooner, Plaintiffs did not act inconsistent with their present assertion of rights.  There is no evidence that Plaintiffs, for example, told Defendants at any time that

they would not attempt to collect delinquent contributions. There also is no evidence that Plaintiffs internally decided to forfeit those contributions. At bottom, nothing in the record supports Defendants' waiver defense.

## IV.     Conclusion

Plaintiffs' summary judgment motion [42] on the issue of liability is granted, and Defendants' cross-motion [45] [48] is denied. Because American Weathermakers and Northern Weathermakers HVAC are a "single employer," American Weathermakers is equally liable under the Collective Bargaining Agreement.

The December 17, 2015 status hearing remains set at 9:45 a.m. in Courtroom 1725. The parties should meet and confer in advance of the status hearing and come prepared to set a brief discovery schedule for Plaintiffs to determine damages.

Dated: December 10, 2015

Entered:

United States District Judge